# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| TYRONE SMITH Sr., father of Tyrone L. Smith Jr., deceased, and T.L.S. (a minor), deceased, TAKITA HALE, individually, and as next friend and mother of Tyrone L. Smith Jr., deceased, CHARMIN SMITH, individually and as next friend and mother of T.L.S. (a minor), deceased, and FELICIA CURRIE, individually and as next friend of Tre'von F. Davis, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> JEREMY L. GRANT II, DYER COUNTY, TENNESSEE, DYER COUNTY SHERIFF'S OFFICE, DYER COUNTY SHERIFF, JEFF BOX, individually and in his official capacity, THE CITY OF DYERSBURG, TENNESSEE, DYERSBURG POLICE DEPARTMENT, DYERSBURG POLICE CHIEF STEVE ISBELL, individually and in his official capacity, DYERSBURG POLICE OFFICER ALEX McCOMMON, individually and in his Official capacity as a Police Officer, DYERSBURG POLICE OFFICER PATRICK LEAKE, individually and in his official capacity as a Police Officer, DYERSBURG POLICE OFFICER LOGAN ABBOTT, individually and in his capacity as a Police Officer, John and Jane Doe law enforcement personnel, individually and in their official capacity as law enforcement personnel, <br><br> Defendants. | Case No. 2:21-cv-02302-JPM-atc |

## ORDER GRANTING DYER COUNTY DEFENDANTS' MOTION TO DISMISS

Before the Court is the Dyer County Defendants' Motion to Dismiss, filed on February 11, 2022.  (ECF No. 43.)  Defendants filed an accompanying Memorandum in Support.  (ECF No. 43-1.)  Plaintiffs filed a Response in Opposition to Dyer County Defendants' Motion to Dismiss and an accompanying Memorandum of Law in Support, on March 4, 2022.  (ECF Nos. 49, 49-1.)  On March 7, 2022, the Court held a hearing on Defendants' Motion.  (ECF No. 50.)  On March 9, 2022, the Dyer County Defendants filed a Reply to Plaintiffs' Response to Defendants' Motion to Dismiss.  (ECF No. 51.)  For the reasons set forth below, the Dyer County Defendants' Motion to Dismiss is **GRANTED**, subject to the qualifications detailed below.

I.     BACKGROUND

   *A. Factual Background*

"This is a civil rights, personal injury, and wrongful death action arising from the acts and omissions, policies, practices, and culture of the Dyersburg Police Department, its officers, and the actions of Jeremy Grant, II."  (2d Amend. Compl., ECF No. 29 at PageID 1527.)  Plaintiffs allege that "[o]n or about May 17, 2020, at approximately 1:08 a.m., Defendants . . . intentionally targeted and pursued a vehicle occupied by four (4) young black men in violation of these men's constitutional and statutory rights," because of their race and with "no reasonable suspicion[] [or] probable cause."  (Id. at PageID 1527, ¶ 29.)  Plaintiffs additionally allege that Defendant Officer Alex McCommon of the Dyersburg Police Department "intentionally initiated a high-speed pursuit of Defendant Grant's vehicle under conditions [i.e., in the rain, turning off his emergency lights and siren, on an unlit roadway,] in which it was foreseeable that he was making the occupants of the vehicle more vulnerable to an automobile accident."  (Id. ¶¶ 31–32, 34–36.)  Plaintiffs allege that "Defendant McCommon acted with deliberate indifference and a conscious disregard of a great risk of serious harm."  (Id. ¶ 37.)

During the pursuit, the automobile driven by Defendant Grant "left the roadway[, flipped,] and crashed," resulting in the deaths of his passengers Tyrone L. Smith, Jr., T.L.S., and Tre'von F. Davis (the "Decedents"), on whose behalf Plaintiffs bring this action. (Id. at PageID 1527–28.) Plaintiffs allege that "[o]n information and belief, Defendant McCommon or other law enforcement personnel responding to the scene hit or ran over one or more of the Decedents with his or their patrol cars." (Id. at PageID 1528; see also id. ¶ 43.) Plaintiffs allege that Defendant McCommon focused on arresting Defendant Grant rather than on rendering aid to the injured Decedents, and that "[n]o aid was rendered to the dying Passengers until fire and emergency medical services arrived some time later." (ECF No. 29 at PageID 1528; see also id. ¶¶ 50–52, 62.) Plaintiffs allege that "the injuries to Tyrone and Tyronzen Smith," two of the Decedents, would not have been fatal if aid had been given to them sooner. (ECF No. 29 ¶ 53.)

Plaintiffs allege constitutional violations against the Dyersburg Defendants under the Fourth, Fifth, Eighth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 (Id. ¶¶ 63–79), as well as negligence and negligence per se, false arrest, intentional infliction of emotional distress, negligent infliction of emotional distress, respondeat superior, and failure to render aid. (Id. ¶¶ 80–135.) The allegations of the complaint relating to the Dyer County Defendants are discussed in more detail below.

B. Procedural Background

This action was initiated on May 12, 2021. (Compl., ECF No. 1.) On the same day, Plaintiffs subsequently filed a First Amended Complaint. (ECF No. 7.) On October 11, 2021, the deadline for filing motions to amend pleadings or join parties (see ECF No. 17 at PageID 168), Plaintiffs filed a Motion for Leave to File Second Amended Complaint to Add Parties, which the Court denied without prejudice on October 15, 2021, for failure to include the required certificate

3

of consultation. (ECF Nos. 25, 26.) On October 19, 2021, Plaintiffs refiled their Motion. (ECF No. 27.) Plaintiff sought to add the Dyer County Defendants, noting that when Plaintiffs filed their First Amended Complaint, "there was confusion as to the roles of the respective officers and law enforcement agencies involved in the occurrence *sub judice*" and that "[d]uring the exchange of initial disclosure materials, it ha[d] become apparent that Plaintiffs likely made an error in omitting [the Dyer County] Defendants due to a misconception or misunderstanding of the facts." (Id. ¶¶ 5–6.) Per Plaintiffs' Certificate of Consultation, counsel for the Dyersburg Defendants did not oppose the Motion. (ECF No. 27-2.) The Dyer County Defendants were not consulted, as they were not yet a party to the suit. On October 22, 2021, the Court granted Plaintiffs' Motion (ECF No. 28), and on October 26, 2021, Plaintiffs filed a Second Amended Complaint naming the Dyer County Defendants as defendants for the first time (2d Amend. Compl., ECF No. 29).

The Dyer County Defendants filed the instant Motion to Dismiss on February 11, 2022, along with a Memorandum in Support. (ECF Nos. 43, 43-1.) The same day, the Dyer County Defendants also filed a Motion to Stay Discovery and Deadlines, requesting a stay of "discovery and all case deadlines pending the Court's ruling on their Motion to Dismiss." (ECF No. 44.) They also filed a Motion to Amend the Scheduling Order and to Continue the Trial. (ECF No. 45.) On February 16, 2022, the Court entered an Order Denying Motion to Continue Trial and Requiring Certain Disclosures by the Parties. (ECF No. 46.) The Court ordered the originally named Dyersburg Defendants and the Plaintiffs to produce their Rule 26(a)(1) disclosures to the newly named Dyer County Defendants within 10 business days of the Order. (Id. at PageID 1664.) The Court granted the Motion to Stay Discovery and Deadlines as to the Dyer County Defendants' production obligations only, ordering that disclosures from the Dyer County Defendants "shall await disposition of the Dyer County Defendants' Motion to Dismiss as shall discovery as to those

Defendants." (Id. at PageID 1164, 1664 n.2.) The Court then set a hearing on the Motion to Dismiss for March 7, 2022. (ECF No. 47.)

Plaintiffs filed a Response in Opposition to Dyer County Defendants' Motion to Dismiss and an accompanying Memorandum of Law in Support on March 4, 2022. (ECF No. 49.) On March 7, 2022, the Court held a Video Motion Hearing on Defendants' Motion. (ECF No. 50.) On March 9, 2022, the Dyer County Defendants filed a Reply to Plaintiffs' Response to Defendants' Motion to Dismiss. (ECF No. 51.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss only tests whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery. Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire

5

Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A complaint need not contain detailed factual allegations. Twombly, 550 U.S. at 570. A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd, 481 F. App'x 252 (6th Cir. 2012). A court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

### III. ANALYSIS

As a preliminary matter, Plaintiffs concede in their Response to Defendants' Motion that Plaintiffs' claims against Sheriff Jeff Box and the Dyer County Sheriff's Office must fail. (ECF No. 49-1 at PageID 1674.) In particular, "Plaintiff[s] concede[] that the Dyer County Sheriff's Office and the suit against Sheriff Box in his official capacity should merge into the claims against Dyer County.[1] Plaintiff[s] further concede[] that there appears to be no viable claim in this matter against Sheriff Box in his individual capacity." (Id.) "Plaintiffs respectfully request that the Court

---

[1] Defendants assert in their Motion that the "entity named as the 'Dyer County Sheriff's Office' should be dismissed [as a matter of law] because said Defendant is not a separate, suable entity apart from Dyer County itself either under state or federal law." (ECF No. 43-1 at PageID 1643.) Defendants additionally contend that "where the entity is named as a defendant, an official-capacity claim against an individual defendant is redundant." (Id. at PageID 1641–42.) (internal citations omitted.) Thus, Defendants contend, the claim against Sheriff Box in his official capacity should be dismissed as redundant to the claims against Dyer County. (Id. at PageID 1642.)

grant the Dyer County Defendants' Motion to Dismiss in part" with respect to those Defendants. (Id.) Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Sheriff Box in both his official and individual capacities and the Dyer County Sheriff's Office.

The Dyer County Defendants further argue that Plaintiffs have failed to state a claim against them under 42 U.S.C. § 1983. (ECF No. 43-1 at PageID 1637–43.) Plaintiffs respond that they "received the cruiser and body cam videos on October 6, 2021, and the deadline to file motions to add parties was October 11, 2021." (ECF No. 49-1 at PageID 1673.) "Due to haste created by these time constraints," Plaintiffs state, "Plaintiffs' counsel admits that the Second Amended Complaint is less than artfully drafted. Plaintiffs' counsel did not intend to allege civil rights claims against Dyer County, but to proceed against Dyer County under the theory of negligent operation of a motor vehicle under Tenn. Code Ann. § 29-20-202." (Id.) Accordingly, the Court will not consider whether the Second Amended Complaint adequately pleads violations of § 1983 against Dyer County.[2]

Because Plaintiffs have failed to allege a claim against the Dyer County Defendants under Tenn. Code Ann. § 29-20-202, their only asserted basis for suit against the Dyer County Defendants, Defendants' Motion to Dismiss is **GRANTED** as to Dyer County, as discussed below.

### A. Plaintiffs Have Failed to Allege a GTLA Claim Against the Dyer County Defendants

Plaintiffs contend in their Response that they intended to bring a claim against Dyer County under Tenn. Code Ann. § 29-20-202, part of the Tennessee Governmental Tort Liability Act (the "GTLA"), because "on one of the videos [received in discovery], a vehicle marked Dyer County Sheriff arrived on the scene of the accident, and someone one the scene can be simultaneously heard to make an exclamation indicating that the vehicle had run over one of the decedents." (ECF

---

[2] Likewise, the Court will not consider Defendants' argument that Plaintiffs' 42 U.S.C. § 1983 claims against Dyer County are barred by the statute of limitations. (See ECF No. 43-1 at PageID 1633–37.)

No. 49-1 at PageID 1672.)

Defendants assert on Reply that:

Plaintiffs' contentions of what they 'intended' to plead has no bearing on what they actually pled. Plaintiff[s] *did not* plead that a Dyer County officer 'ran over' one of the decedents or even that a Dyer County officer injured one of the decedents. In fact, they pled *no facts* to support any claims against Dyer County whatsoever. Without such facts asserted, Plaintiffs failed to state a claim against Dyer County.

(ECF No. 51 at PageID 1677.)

In response to a similar argument during the Video Motion Hearing, Plaintiffs contended that Dyer County was on notice that it could be brought in as a defendant, as well as that it is clear from the facts alleged in the Second Amended Complaint how Dyer County was involved, if it was involved at all. (ECF No. 50.) Plaintiffs also asserted that, although the video in question does not actually show a vehicle running over a decedent, the timing of a person saying that "they" hit someone corresponds with the Dyer County Sheriff's vehicle arriving and driving over the median. (Id.) Plaintiffs stated, however, that they are still unsure whether that vehicle "hit a person or debris" and are waiting to receive the report from the State of Tennessee. (Id.)

"[A]lthough the pleading and amendment of pleadings rules in federal court are to be liberally construed, the administration of justice is not well served by the filing of premature, hastily drawn complaints." Crehan v. Countrywide Bank, FSB, No. 1:11-cv-613, 2012 WL 4340848, at *3 (W.D. Mich. Sept. 20, 2012) (quoting Burnett v. Grattan, 468 U.S. 42, 50 n.13 (1984)). Even pro se litigants, therefore, must "draft pleadings that meet the requirements of the federal rules," including those of Twombly and Iqbal. Crehan, 2012 WL 4340848, at *3–4 (quoting West v. Adecco Emp't Agency, 124 F. App'x 991, 992 (6th Cir. 2005) (further internal citations and quotation marks omitted)) ("The Court is not convinced . . . that Plaintiffs, by alluding to facts that they could have alleged, or by suggesting violations that could still be pled, have

8

revealed any error in the Magistrate Judge's conclusion that their claims fall short of the *Twombly/Iqbal* pleading standard.").

The Court understands that the process of obtaining full discovery in this case has been protracted, through no fault of either Party. (See, e.g., ECF No. 49-1 at PageID 1672.) Plaintiffs' "hastily drawn complaint[]," however, must still meet the federal pleading requirements with respect to a GTLA claim. Crehan, 2012 WL 4340848, at *3 (quoting Burnett, 468 U.S. at 50 n.13). It fails to do so. This is especially true since, while Plaintiffs had only a five-day window between their receipt of the video footage and the deadline to file motions for joinder/amendments, Plaintiffs were not confined to the same time constraint in drafting their amended pleading itself. As Defendants contend, while Plaintiffs' Second Amended Complaint does assert state law claims against the Dyersburg Defendants, the pleading appears to allege only § 1983 claims against the Dyer County Defendants. (See ECF No. 29 ¶¶ 21–135.) (See also ECF No. 51 at PageID 1676.) (citing ECF No. 29 ¶¶ 70, 75–76, 80–135.) Plaintiffs' allegations are discussed more fully below.

Plaintiffs' allegations regarding a decedent being run over and the negligent operation of a motor vehicle under § 29-20-202, or allegations of negligence regarding any other Tennessee statute, do not name the Dyer County Defendants. Plaintiffs allege that "[o]n information and belief, Defendant McCommon [an Officer with the Dyersburg Police Department] or other law enforcement personnel responding to the scene hit or ran over one or more of the Decedents with his or their patrol cars." (ECF No. 29 at PageID 1528.) Plaintiffs further allege that "Defendants violated . . . laws of the State of Tennessee when . . . an officer or officers hit or drove over one or more of the Decedents . . . ." (Id. at PageID 1530.) Plaintiffs also allege several times that one or more of the Decedents was "hit or run over" or "crushed" by Defendant McCommon and/or "another"/"other" "Defendant Officer[(s)]" in a patrol car. (Id. ¶¶ 43, 47, 51, 58–59.) In a count

9

for "Negligence" under a section entitled "Causes of Action Against Defendant, City of Dyersburg," Plaintiffs allege that "[o]ne or more Defendant Officers was negligent in hitting or running over one or more of the Decedents with his or her patrol car." (Id. ¶ 92.) Moreover, in a count for "Negligence Per Se" under the same section, Plaintiffs allege a violation of § 29-20-202 (among other Tennessee statutes) by "Defendant McCommon, Defendant Officers and by imputation, and *respondeat superior*, Defendant City of Dyersburg Police Department and Defendant City of Dyersburg." (Id. ¶ 102.) In the same section, under a "False Arrest" count, Plaintiffs aver, "It shocks the conscience of a civilized society that the Decedents were hit or run over by police vehicles as part of th[e] seizure [at issue]." (Id. ¶ 109.) Counts for "Negligent Infliction of Emotional Distress" and "Failure to Render Aid" in the same section mention only "Defendant Officers" or "Defendants" and "police vehicles" in relation to this alleged incident. (Id. ¶¶ 118, 121, 131.) Plaintiffs also explicitly allege, under their "Respondeat Superior" count in the same section, that "Defendant City of Dyersburg was the owner of the vehicles driven by Defendant Officer Alex McCommon, and Defendant Officers," making the City of Dyersburg "responsible for the damages to Plaintiffs." (Id. ¶ 125, 127.)

Meanwhile, Plaintiffs' allegations that do name the Dyer County Defendants do not sound in state-law negligence but rather in § 1983 violations. (See id. ¶ 9 (noting that Jeff Box and the Dyer County Sheriff's Office are responsible for "ensuring the establishment and enforcement of" policies, practices, customs, etc., of the Dyer County Sheriff's Office, "including training, supervision, and discipline of police officers"), ¶ 70 (alleging § 1983 and § 1988 violations by Dyer County under respondeat superior), ¶¶ 75–76 (alleging against Dyer County Sheriff's Office the failure to "train, supervise, or control [its] officers regarding their dut[ies] to render aid" and "to uphold the laws of Tennessee and the United States Constitution equally and with respect to

10

all citizens, regardless of race").)  Plaintiffs do allege that "[n]either Dyer County nor Sheriff Box have immunity for violating the civil rights of citizens and has [*sic*] waived sovereign immunity for the acts and/or omissions of its employees set forth herein pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-10[1], *et seq.*, and Tenn. Code Ann. § 8-8-302."  (Id. ¶ 9.)

The Court finds that Plaintiffs' allegations have failed to state a negligence claim pursuant to § 29-20-202 against the Dyer County Defendants.  Instead, Plaintiffs appear to allege both negligence and § 1983 claims against the Dyersburg Defendants but only a § 1983 claim against the Dyer County Defendants.  Even considered in the light most favorable to Plaintiffs, these allegations fail to put the Dyer County Defendants on notice that Plaintiffs intended to bring a claim against them under § 29-20-202.  While Plaintiffs attempt to broaden the target of their claim by referring to "Defendant Officers" who could have hit or run over a Decedent, Plaintiffs nowhere plausibly allege that such other officers were associated with Dyer County, as opposed to the City of Dyersburg, despite having had the opportunity to specify as much after viewing the video footage which prompted their Second Amended Complaint.  To the contrary, Plaintiffs allege that "Defendant City of Dyersburg was the owner of the vehicles driven by . . . Defendant Officers," making the City of Dyersburg "responsible for the damages to Plaintiffs." (Id. ¶ 125, 127.) Therefore, the Court **GRANTS** the Dyer County Defendants' Motion to Dismiss as to Dyer County, the only remaining Dyer County Defendant.

B. *Other Theories Preclude Plaintiffs' Ability to Successfully Make Out Their Intended Claims Against Dyer County*

Ordinarily, the Court would consider permitting Plaintiffs to amend their complaint once more to attempt to properly allege a GTLA claim against Dyer County.  Defendants, however, contend that a GTLA claim against them would have to be summarily dismissed for two additional

11

reasons: (1) Defendants would be immune from such a claim under that statute (ECF No. 43-1 at PageID 1644–46) and, in any case, (2) such a claim would be barred by the relevant statute of limitations (ECF No. 51 at PageID 1677–80). The Court addresses each of these arguments in turn below.

        i.      <u>Dyer County Would Likely Be Immune from Such Claims Under the GTLA</u>

Before Plaintiffs filed their Response, clarifying that they intended to bring a GTLA negligence claim against the Dyer County Defendants, Defendants asserted in their Motion that "even if Plaintiffs intended to plead state law claims against the Dyer County Defendants, *which they did not*, such claims would be barred by the Tennessee Governmental Tort Liability Act ('GTLA')." (ECF No. 43-1 at PageID 1644.) Defendants argue that the GTLA's "civil-rights exception" from the statute's waiver of governmental immunity extends to "[c]laims arising out of the same set of circumstances as a civil-rights § 1983 claim." (<u>Id.</u> at PageID 1645.) (quoting <u>Barbieri v. Knox Cnty.</u>, 2016 WL 154098, at *4 (E.D. Tenn. Jan. 12, 2016) (citing <u>Johnson v. City of Memphis</u>, 617 F.3d 864, 872 (6th Cir. 2010)).) Because Plaintiffs' negligence claims are "based upon the same facts and circumstances upon which they base their civil rights claims," Defendants contend, "to the extent Plaintiffs intended to set forth state law negligence claims against the Dyer County Defendants, the Dyer County Defendants retain immunity[,] and said claims must be dismissed."[3] (<u>Id.</u> at PageID 1646.)

Plaintiffs did not respond to Defendants' argument regarding immunity for state-law negligence claims. (<u>See</u> <u>generally</u> ECF No. 49-1.) Plaintiffs contend, however, that "the damages

---

[3] Defendants also contend that "[i]t is well-settled that a plaintiff can never hold a governmental entity directly and vicariously liable for intentional torts," and so the Dyer County Defendants "cannot be held liable for false arrest, intentional infliction of emotional distress, or any alleged failure to render aid," nor for any "alleged negligent acts" leading to such intentional torts. (ECF No. 43-1 at PageID 1644–45, 1645 n.3.) (internal citations omitted.) Because Plaintiffs clarify in their Response that they only intended to allege negligent operation of a motor vehicle under Tenn. Code Ann. § 29-20-202, the Court does not consider Defendants' argument as to intentional torts. (<u>See</u> ECF No. 49-1 at PageID 1673.)

12

and injuries caused by the negligence of Dyer County were part of the same transaction or occurrence giving rise to this suit . . . ." (Id. at PageID 1673.) Defendants do not address the issue of immunity on Reply, but they asserted during the Video Motion Hearing that the civil-rights protections of the GTLA would provide immunity to any GTLA claims that Plaintiffs were attempting to bring. (See generally ECF No. 51; see also ECF No. 50.)

The GTLA "codifies the Tennessee common law rule of sovereign immunity for counties, municipalities, and other governmental entities," and provides "certain exceptions [to] or waivers" of such immunity. Campbell v. Anderson Cnty., 695 F. Supp. 2d 764, 776–77 (E.D. Tenn. 2010) (internal citations omitted). Section 29-20-202 of the GTLA, on which Plaintiffs allegedly intend to rely, removes "immunity from suit of all governmental entities . . . for injuries resulting from the negligent operation by any employee of a motor vehicle or other equipment while in the scope of employment." Tenn. Code Ann. § 29-20-202(a). The Act also removes immunity "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment." Id. § 29-20-205. This latter provision, however, is subject to various enumerated exceptions, one of which is the "invasion of . . . civil rights," which includes § 1983 claims. Id. § 29-20-205(2); Partee v. City of Memphis, Tenn., 449 F. App'x 444, 448 (6th Cir. 2011) (citing Johnson v. City of Memphis, 617 F.3d 864, 872 (6th Cir. 2010)). "A negligence claim falls within this exception where 'the same circumstances giv[e] rise' to both the negligence and civil rights claims. Stated another way, the GTLA 'preserves immunity for suits claiming negligent injuries arising from civil rights violations.'" Partee, 449 F. App'x at 448 (quoting Johnson, 617 F.3d at 872). "The majority of courts to address the []GTLA's civil-rights exception have done so by asking whether a plaintiff's claims 'are in essence claims for violation of [the plaintiff's] constitutional rights.'" Savage v. City of Memphis, 620 F. App'x 425, 429 (6th Cir. 2015) (quoting

13

Johnson, 617 F.3d at 872). "[A] plaintiff cannot circumvent a defendant's immunity by couching its civil rights claim as one of negligence." Tinkle v. Dyer Cnty., Tenn., No. 18-01124-STA-egb, 2018 WL 6840155, at *2 (W.D. Tenn. Dec. 31, 2018) (citing Campbell v. Anderson Cnty., 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010)).

In Partee, the negligence claims that were dismissed "ar[o]se out of exactly the same circumstances as the [plaintiffs'] civil rights claims, thus falling within the exception to the waiver of immunity set forth in the GTLA." 449 F. App'x at 448 (internal citation omitted) (dismissing "negligence claims against the City that were based directly on [the officer's] [allegedly unconstitutional] conduct while arresting [the plaintiff]"). Accordingly, Defendants' cited unpublished district court opinions all involve situations in which courts dismissed plaintiffs' state-law claims because the plaintiffs failed to "identify any facts supporting [their] negligence . . . claims that [did] not also support one of the grounds for [their] § 1983 civil rights claim[s]." Lawler v. Hardeman Cnty., Tenn., No. 1:19-cv-01174-STA-jay, 2019 WL 6310729, at *4 (W.D. Tenn. Nov. 25, 2019). (See also ECF No. 43-1 at PageID 1645–46.) (collecting cases.)

After Partee, however, the Sixth Circuit found immunity under the civil rights exception where an officer, Nolen, determined a carjacking report not to be genuine but "failed to change the vehicle's status in the National Crime Information Center before his shift ended that day," leading to a police chase of the reported vehicle by three other officers, one of whom fatally shot the vehicle's driver. Savage, 620 F. App'x at 426–27. The driver's heirs brought § 1983 excessive force claims for the shooting, as well as negligence claims under the GTLA for Nolen's actions. Id. at 429. The Court held that "Nolen's alleged negligence ar[o]se[] out of the same circumstances giving rise to [p]laintiffs' civil-rights claim" and that the City was thus immune from the negligence claims. Id. at 430. Thus, under Savage, the civil rights exception extends to state-law

14

negligence claims in which the alleged negligence proximately caused the asserted civil-rights violations.

Plaintiffs' negligence claim against Dyer County would be barred under Savage. Here, the causal chain is reversed from that in Savage: The alleged negligence by the Dyer County vehicle occurred only because of the alleged civil rights violations by the Dyersburg Defendants that purportedly brought the Dyer County vehicle to the scene of the collision. In that sense, the "negligent injuries" here seem to "aris[e]" even more concretely "from [the] civil rights violations." Partee, 449 F. App'x at 448 (quoting Johnson, 617 F.3d at 872) (internal quotation marks omitted). Moreover, Plaintiffs' Second Amended Complaint alleges that "the conduct of Defendant Officers in hitting one or more of the Decedents with a patrol car" was "in violation of . . . the Fourth and Fourteenth Amendment of the United States Constitution . . . in violation of 42 U.S.C. § 1983 . . . ." (ECF No. 29 ¶ 69.) A negligence claim based on these same facts would clearly be subject to immunity under the civil-rights exception. Plaintiffs should not be able to escape immunity by asserting only the negligence portion of this claim against a different defendant, as the Tennessee Supreme Court has held that the GTLA is "to be construed strictly in favor of the sovereign," i.e., in favor of retaining immunity. Hughes v. Metro. Gov't of Nashville & Davidson Cnty, 340 S.W.3d 352, 361 (Tenn. 2011) (internal citation omitted). While the Parties have not addressed the interaction between § 29-20-202(a) and § 29-20-205(2), and the Court has not found case law on that particular issue, it appears that the retention of immunity under the latter provision would override any waiver of immunity under the former.

Therefore, the Court finds that a further amended complaint by Plaintiffs that managed to meet the Iqbal/Twombly pleading standard for alleging its state-law negligence claim against Dyer County under the GTLA would likely be futile, as Dyer County appears to maintain its immunity

to such a claim under the GTLA.

### ii. The Court Need Not Reach Defendants' Statute of Limitations Issue with Respect to Plaintiffs' Intended Negligence Claims

Defendants additionally contend in their Motion that "Plaintiffs' claims against the Dyer County Defendants are barred by the applicable statute of limitations." (ECF No. 43-1 at PageID 1633.)  After clarifying that they did not intend to allege civil rights claims against Dyer County but only negligent operation of a motor vehicle under Tenn. Code Ann. § 29-20-202, Plaintiffs' respond, with very limited analysis, that their claims against the Dyer County Defendants are permitted under the discovery rule and the relation back doctrine. (ECF No. 49-1 at PageID 1673.) (citing Sutton v. Barnes, 78 S.W.3d 908, 916 (Tenn. Ct. App. 2022), Doyle v. Frost, 49 S.W.3d 853, 858 (Tenn. 2001).)  The Dyer County Defendants reply that "even if Plaintiff[s] had asserted a negligence claim against Dyer County, said claim would be barred by the statute of limitations." (ECF No. 51 at PageID 1677.) (formatting altered.)  As in their Motion, on Reply, Defendants apply the federal "discovery rule," contending that "[f]ederal procedural law provides that a plaintiff need not be aware of every detail or person involved in causing the injury for the limitations period to commence," as long as the plaintiff knew of the injury itself. (Id.) (internal citations omitted.) (alteration in original.)

The Court notes that neither Party has properly addressed the applicable law around the statute of limitations, which as Plaintiffs' summarily cited case law articulates, is more plaintiff-friendly than the federal rule. See Sutton v. Barnes, 78 S.W.3d 908, 912–13, 916 (Tenn. Ct. App. 2022).  "A claim under the GTLA accrues or 'arises,' in accordance with Tennessee's 'discovery rule,' 'when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she sustained an injury as a result of the defendant's wrongful conduct." Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 844 (6th Cir. 2015) (quoting Sutton v. Barnes,

16

78 S.W.3d 908, 916 (Tenn. Ct. App. 2002)). In Sutton, the Tennessee Court of Appeals clarified that a cause of action in tort does not accrue until the plaintiff "discovers, or 'reasonably should have discovered . . . the identity of the defendant who breached the duty.'" 78 S.W.3d at 912–13.

The Court, however, finds it unnecessary to address further the issue of whether Plaintiffs' negligence claim against Dyer County would be barred by the applicable statute of limitations, as Plaintiffs' claim fails on other grounds, as discussed above.

  C. *The Claims Against "John and Jane Doe Law Enforcement Personnel" Should Be Dismissed Insofar as Such Officers Are from the Dyer County Sheriff's Office*

Finally, Defendants argue that "the claims against 'John and Jane Doe law enforcement officers' should be dismissed" because "the filing of a complaint against unnamed defendants does not toll the running of the statute of limitations against those parties" so "any future attempt to amend the Complaint to substitute properly named individuals for the 'John and Jane Doe law enforcement officers' would be futile." (ECF No. 43-1 at PageID 1646.) (citing Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996), cert. denied, 519 U.S. 821 (1996).) (further internal citation omitted.) Plaintiff does not respond to this argument. (See generally ECF No. 49-1.) Although a party ordinarily forfeits "issues not raised in response to [a] dispositive motion[]," Swanigan v. FCA US LLC, 938 F.3d 779, 786 (6th Cir. 2019) (internal citation omitted), the Court will briefly consider Defendants' argument.

Plaintiffs allege in their Second Amended Complaint that "Defendants John or Jane Doe[] . . . were at all relevant times law enforcement officers from various agencies, including, but not limited to, Dyersburg Police Department, Dyer County Sheriff's Office, and Tennessee Highway Patrol . . . ." (ECF No. 29 ¶ 16.) Because Plaintiffs' intended state-law negligence claim against the Dyer County Defendants must fail, as discussed above, Plaintiffs cannot later substitute named Dyer County Sheriffs' Office employees or other Dyer County personnel for the John or Jane Doe

17

defendants. Defendants' Motion as to the John and Jane Doe Defendants is thus **GRANTED** insofar as Plaintiffs' may have intended to substitute such named individuals.

As noted above, the Court has declined to address Defendants' argument regarding the interaction of the statute of limitations and any § 1983 claims against the Dyer County Defendants, as Plaintiffs did not intend to bring such claims. The Court at this time likewise declines to address Defendants' statute-of-limitations argument vis-à-vis any intended future substitutions of named Dyersburg defendants for the John and Jane Doe defendants. The Court will address that issue at which time, if any, that the Dyersburg Defendants raise it in their own dispositive motion.

### IV. CONCLUSION

For the reasons set forth above, the Dyer County Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiffs' claims against the Dyer County Defendants.

**SO ORDERED**, this 21st day of April, 2022.

                                              /s/ Jon P. McCalla
                                              JON P. McCALLA
                                              UNITED STATES DISTRICT JUDGE