## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| TYRONE SMITH Sr., father of Tyrone L. Smith Jr., deceased, and T.L.S. (a minor), deceased, TAKITA HALE, individually, and as next friend and mother of Tyrone L. Smith Jr., deceased, CHARMIN SMITH, individually and as next friend and mother of T.L.S. (a minor), deceased, and FELICIA CURRIE, individually and as next friend of Tre'von F. Davis, deceased, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 2:21-cv-02302-JPM-atc |
| v. | ) ) ) | |
| JEREMY L. GRANT II, DYER COUNTY, TENNESSEE, DYER COUNTY SHERIFF'S OFFICE, DYER COUNTY SHERIFF JEFF BOX, individually and in his official capacity, THE CITY OF DYERSBURG, TENNESSEE, DYERSBURG POLICE DEPARTMENT, DYERSBURG POLICE CHIEF STEVE ISBELL, individually and in his official capacity, DYERSBURG POLICE OFFICER ALEX McCOMMON, individually and in his official capacity as a Police Officer, DYERSBURG POLICE OFFICER PATRICK LEAKE, individually and in his official capacity as a Police Officer, DYERSBURG POLICE OFFICER LOGAN ABBOTT, individually and in his capacity as a Police Officer, John and Jane Doe law enforcement personnel, individually and in their official capacity as law enforcement personnel, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Summary Judgment, filed on August 11, 2022. (ECF No. 64.)   On September 19, 2022, Plaintiffs filed their Response in Opposition to Defendants' Motion for Summary Judgment. (ECF No. 67.)   Defendants filed their reply on October 3, 2022.   (ECF No. 70.)   For the reasons discussed below, Defendants' Motion for Summary Judgment is hereby **GRANTED** in its entirety.

## I.   BACKGROUND

### A.   Allegations

"This is a civil rights, personal injury, and wrongful death action arising from the acts and omissions, policies, practices, and culture of the Dyersburg Police Department, its officers, and the actions of Jeremy Grant, II."   (2d Amend. Compl., ECF No. 29 at PageID 1527.)   Plaintiffs allege that "[o]n or about May 17, 2020, at approximately 1:08 a.m., Defendants . . . intentionally targeted and pursued a vehicle occupied by four (4) young black men in violation of these men's constitutional and statutory rights" because of their race and with "no reasonable suspicion[] [or] probable cause."   (Id. at PageID 1527, ¶ 29.)   Plaintiffs additionally allege that Defendant Officer Alex McCommon ("McCommon") of the Dyersburg Police Department "intentionally initiated a high-speed pursuit of Defendant Grant's vehicle under conditions, [i.e., in the rain on an unlit roadway with his emergency lights and siren turned off,] in which it was foreseeable that he was making the occupants of the vehicle more vulnerable to an automobile accident."   (Id. ¶¶ 31–32, 34–36.)   Plaintiffs allege that "McCommon acted with deliberate indifference and a conscious disregard of a great risk of serious harm."   (Id. ¶ 37.)   Plaintiffs also name Defendant Police Chief Steve Isbell ("Isbell"), head of the Dyersburg Police Department, individually and in his official capacity.   (Id. ¶ 12.)   They allege that Isbell was responsible for the "hiring, training, supervision,

and discipline of the police officers" as well as "the establishment and enforcement of the policies and customs of the Dyersburg Police Department." (Id.)

During the pursuit, the automobile driven by Defendant Jeremy Grant, II ("Grant") "left the roadway[, flipped,] and crashed," resulting in the deaths of his passengers Tyrone L. Smith, Jr., T.L.S., and Tre'von F. Davis (the "Decedents"), on whose behalf Plaintiffs bring this action. (Id. at PageID 1527–28.)  Plaintiffs allege that "[o]n information and belief, Defendant McCommon or other law enforcement personnel responding to the scene hit or ran over one or more of the Decedents with his or their patrol cars." (Id. at PageID 1528; see also id. ¶ 43.) Plaintiffs additionally allege that McCommon focused on placing Grant under arrest rather than on rendering aid to the injured Decedents, and that "[n]o aid was rendered to the dying Passengers until fire and emergency medical services arrived some time later." (ECF No. 29 at PageID 1528; see also id. ¶¶ 50–52, 62.)  Plaintiffs claim that "the injuries to Tyrone . . . Smith [and T.L.S.]," two of the Decedents, would not have been fatal if aid had been given to them sooner. (Id. ¶ 53.)

Plaintiffs' Complaint alleges that Defendants "substantially deprived" the Decedents of their "Fourth, Fifth, Eighth, and Fourteenth" Amendment rights in violation of 42 U.S.C. §§ 1983 and 1988 (hereinafter "Section 1983" and "Section 1988"). (Id. ¶ 64.)  Plaintiffs specify that this deprivation includes "the use of racial profiling," "unequal application of the laws of Tennessee based on their race," "the unreasonable seizure of their persons," "the use of deadly" and "excessive force," the "deprivation of life and liberty without due process of law," the use of "arbitrary government action[]," and the creation of "state-created danger," with the result of these deprivations being the death of the Decedents. (Id. ¶ 64.)  Plaintiffs' Complaint also asserts that Defendants committed a litany of torts, including negligence, negligence per se, false arrest, negligent and intentional infliction of emotional distress, and failure to render aid. (Id. ¶¶ 80–

135.)  Plaintiffs also argue that Defendant the City of Dyersburg ("Dyersburg") should be held liable for these torts via the doctrine of *respondeat superior*.  (Id. ¶¶ 126–28.)

## B.  Undisputed Facts

In "Plaintiffs' Response to Defendants' Statement of Material Facts" (ECF No. 67), Plaintiffs acknowledge as undisputed many facts that are central to the resolution of Defendant's Motion for Summary Judgment.  The record also contains the Declarations of Officers McCommon (ECF No. 63-3), Patrick Leake (ECF No. 63-4), and Logan Abbott (ECF No. 63-5), as well as the Declaration of Michael R. Hill.  (ECF No. 70-1.)  Hill is an attorney for the Defendants and provided evidence regarding certain videos.  Mr. Hill also testified that Plaintiffs "have not taken any depositions of the Defendant or Defendants' representatives in this case."  (Id. ¶¶ 2–3.)

The Court finds that the following facts are undisputed for purposes of the instant motion.

Defendant Jeremy L. Grant II was the driver of an automobile that was ultimately involved in a single vehicle accident in the early morning hours of May 17, 2020.  (ECF No. 64-2 ¶¶ 6, 9, ECF No. 67 ¶¶ 6, 9.)  At 1:08 A.M. McCommon, a Dyersburg police officer, was on routine patrol in the area of U.S. Highway 51 South and Christie Steet when he "observed a caravan of vehicles moving at a high rate of speed, southbound" on Highway 51.  (ECF No. 64-3 at PageID 1776.)  He paced the vehicles in accordance with police department policy and determined that "the lead vehicle and other vehicles were speeding."  (Id.)  Plaintiffs concede that they "do not have independent knowledge of what McCommon was doing prior to encountering the caravan of vehicles."  (ECF No. 67 at PageID 1805.)  Grant was driving the lead vehicle in the "caravan." (ECF No. 64-2 ¶ 6, ECF No. 67 ¶ 6.)  Grant accelerated, pulling away from the other vehicles. (ECF No. 64-2 ¶ 6, ECF No. 67 ¶ 6.)  At that point, McCommon proceeded to initiate a traffic stop of the vehicle.  (ECF No. 64-2 ¶ 6, ECF No. 67 ¶ 6.)  "McCommon . . . had no knowledge of the

age(s), gender(s), race(s), or even how many people were in the vehicle."  (ECF No. 64-2 ¶ 21, ECF No. 67 ¶ 21; see also ECF No. 62-4 ¶¶ 26–27, ECF No. 67 ¶¶ 26–27.)  McCommon subsequently observed "Grant's vehicle approach another vehicle, swerve abruptly, fishtail, leave the roadway, go airborne, and flip."  (ECF No. 64-2 ¶ 9, ECF No. 67 ¶ 9.)  McCommon radioed dispatch regarding the accident and radioed for emergency medical services ("EMS") units.  (ECF No. 64-2 ¶¶ 10–11, ECF No. 67 ¶¶ 10–11.)  McCommon also asked for backup "because I had a lot of people pulling up on me."  (ECF No. 64-3 at PageID 1776.)  McCommon then observed Grant exit his vehicle.  (ECF No. 64-2 ¶ 12, ECF No. 67 ¶ 12.)

By this time, a crowd had assembled at the site of the crash and was yelling at McCommon. (ECF No. 64-2 ¶ 12, ECF No. 67 ¶ 12.)  McCommon proceeded to arrest Grant "for felony evading arrest" and escorted Grant to his patrol car.  (ECF No. 64-2 ¶ 13, ECF No. 67 ¶ 13.)  At about the same, time Officers Patrick Leake ("Leake"), Logan Abbott ("Abbott"), and "other Dyersburg officers and other Dyer County deputies" were arriving at the scene.  (ECF No. 64-2 ¶ 13, ECF No. 67 ¶ 13.)  Leake and Abbott were not involved in stopping the Grant vehicle, nor did they witness the crash.  (ECF No. 64-2 ¶ 28, ECF No. 67 ¶ 28.)  Leake and Abbott tried to get the crowd "out of the crime scene."  (ECF No. 64-2 ¶ 14, ECF No. 67 ¶ 14.)

Abbott called for multiple EMS units "upon locating" two additional injured people at the site of the crash.  (ECF No. 64-2 ¶ 16, ECF No. 67 ¶ 16.)  Responding officers had "basic [f]irst [a]id training."  (ECF No. 64-2 ¶ 17, ECF No. 67 ¶ 17.)  They did not observe any injuries to those Decedents "that they could help with."  (ECF No. 64-2 ¶ 17, ECF No. 67 ¶ 17.)  Two of the injured individuals were breathing at the time they were located.  (ECF No. 64-2 ¶ 17, ECF No. 67 ¶ 17.) "Abbott believed that there was damage to [their] spinal cords so moving them could be extremely

detrimental." (ECF No. 64-2 ¶ 18, ECF No. 67 ¶ 18.)  A third individual was then "located . . . approximately 30 yards from the vehicle."  (ECF No. 64-2 ¶ 19, ECF No. 67 ¶ 19.)

When EMS arrived, they declared a one of the injured individuals deceased and rendered medical aid to the other two.  (ECF No. 64-2 ¶ 20, ECF No. 67 ¶ 20.)

"Abbott, Leake, and McCommon did not run over anyone and they did not witness anyone get run over."  (ECF No. 64-2 ¶ 22, ECF No. 67 ¶ 22.)  A Dyer County employee "did hit the back bumper of Grant's car, that had been thrown into the far lanes of traffic . . ."  (ECF No. 64-2 ¶ 23, ECF No. 67 ¶ 23.)  At that juncture, bystanders said that a person had been run over.  (ECF No. 64-2 ¶ 23, ECF No. 67 ¶ 23.)  The closest vehicle to decedents "was at least 20 to 30 yards away." (ECF No. 64-2 ¶ 24, ECF No. 67 ¶ 24.)  "None of Dyersburg's vehicles ever left the roadway and all of the [Decedents] were off of the roadway, in the grass."  (ECF No. 64-2 ¶ 25, ECF No. 67 ¶ 25.)

The Dyersburg Police Department operates pursuant to "Dyersburg Police General Orders," a policy and procedure manual, and operated pursuant to that manual on May 17, 2020.  (ECF No. 64-2 ¶ 30, ECF No. 67 ¶ 30.)  Dyersburg Police Department General Order 3-2 prohibits personnel from using race or ethnicity, among other individual characteristics, as the sole reason for stopping a vehicle, issuing a citation, making an arrest, and other police activity.  (ECF No. 64-2 ¶ 32, ECF No. 67 ¶ 32.)  The Dyersburg Police Department has a policy that officers complete a "Traffic Stop & [Field] Interview Demographic Form" for all traffic stops and field interviews, the results of which are reviewed annually.  (ECF No. 64-2 ¶ 33, ECF No. 67 ¶ 33.)  The Department also employs a Training Officer, who conducts and annual review and distributes a summary report of all bias-based profiling issues annually.  (ECF No. 64-2 ¶ 34, ECF No. 67 ¶ 34.)  Reports of the incident on May 17 were reviewed by Dyersburg Police Department supervisors and command

staff, who determined that the officers acted pursuant to Department policy.  (ECF No. 64-2 ¶ 35, ECF No. 67 ¶ 35.)  McCommon, Leake, and Abbott have all met the Department's standards in their annual evaluations.  (ECF No. 64-2 ¶ 38, ECF No. 67 ¶ 38.)

   *C.  Procedural Background*

   Plaintiffs filed their initial complaint in the instant action on May 12, 2021.  (ECF No. 1.) Plaintiffs filed a First Amended Complaint on the same date.  (ECF No. 7.)  On October 11, 2021, Plaintiffs filed a Motion for Leave to File Second Amended Complaint to Add Parties, which the Court denied without prejudice on October 15, 2021, for failure to include the required certificate of consultation.  (ECF Nos. 25, 26.)  On October 19, 2021, Plaintiffs moved for leave to refile their Motion, which was granted on October 22, 2021.  (ECF Nos. 27, 28.)  On October 26, 2021, Plaintiffs filed a Second Amended Complaint.  (ECF No. 29.)

   Defendants Dyer County Sheriff Jeff Box, the Dyer County Sheriff's Office, and Dyer County filed a Motion to Dismiss on February 11, 2022.  (ECF No. 43.)   After a March 7, 2022 hearing on Defendants' Motion (ECF No. 50) the Court granted the Motion to Dismiss as to those Defendants.  (ECF No. 55.)

   The instant Motion for Summary Judgment was filed on August 11, 2022.  (ECF No. 64.) In support of the Motion, Defendants submitted the affidavits of McCommon (ECF No. 63-3), Leake (ECF No. 63-4), Abbott (ECF No. 63-5), and Isbell.  (ECF No. 63-6.)  On September 19, 2022, Plaintiffs filed their Response in Opposition to Defendants' Motion for Summary Judgment. (ECF No. 67.)  Plaintiffs also moved to submit video evidence contained on an external hard drive on September 27, 2022.  (ECF No. 68.)  That motion was granted on September 28, 2022.  (ECF No. 69.)  Defendants filed their Reply to Plaintiffs' Response in Opposition on October 3, 2022. (ECF No. 70.)

## II.   LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted).

In order to "show that a fact is, or is not, genuinely disputed," a party must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." L.R. 56.1(b)(3); Bruederle, 687 F.3d at 776 (alterations

in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"  Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'"  Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'"  Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251–52).  Summary judgment "'shall be entered' against the non-moving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'"  Rachells v. Cingular Wireless Employee Servs., LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)).  "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251).  "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present

'affirmative evidence' to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247–254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)).  "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. & Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)).  Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient.  Mitchell, 964 F.2d at 584–85.

## III.   ANALYSIS

### A.   CLAIMS UNDER THE FEDERAL CONSTITUTION

#### a.   Fourth Amendment Unreasonable Seizure Violations

Plaintiffs' Complaint alleges that McCommon unlawfully seized the Decedents following the May 17, 2020, car crash through the arrest of Grant.  (ECF No. 29 ¶ 106.)  While Defendants argue that the high-speed chase did not constitute a seizure of Grant and the Decedents "within the meaning of the Fourth Amendment," Plaintiffs never claim in the Complaint that the police chase was a seizure.  (ECF No. 64-1 at PageID 1754.)  It is uncontested that McCommon drew his gun in arresting Defendant Grant.  (See ECF No. 64-3 ¶ 6.)

The arrest of Grant after the crash was a seizure.  See Torres v. Madrid, 141 S. Ct. 989, 996 (2021) ("[A]rrests are seizures of a person").  Plaintiffs assert that the then-incapacitated Decedents should also be considered seized.  (ECF No. 67-1 at PageID 1822) (citing Brendlin v. California, 551 U.S. 249, 256–57 (2007)).  In order to determine whether an unlawful seizure occurred, the Court must first evaluate whether McCommon had probable cause under the Fourth Amendment for the arrest of Grant.  See United States v. Mendenhall, 446 U.S. 544, 551 (1980)

("The Fourth Amendment's requirement that searches and seizures be founded upon an objective justification[] governs all seizures of the person").

Defendants assert that McCommon had probable cause to initiate a traffic stop. (ECF No. 64-1 at PageID 1756.) Defendants argue that Grant was "speeding and driving recklessly" when McCommon activated his emergency lights and siren and attempted to pull Grant and the Decedents over. (Id.) McCommon attests that he utilized a technique called "pacing" to track the speed of Grant's car, and also noticed him speeding up and pulling away from other vehicles in a "convoy." (ECF No. 64-3 at ¶ 3–4.) Plaintiffs dispute that McCommon had probable cause as he "does not state with specificity which vehicle he was pacing, his distance from that vehicle, the distance for which he followed that vehicle, the length of time he followed that vehicle, or the speed at which either he or the vehicle was traveling." (ECF No. 67-1 at PageID 1818.) Plaintiffs have not presented evidence disputing that Grant was speeding or driving recklessly, and do not dispute that Grant's vehicle accelerated and pulled away from the other vehicles in the convoy. (ECF No. 64 at PageID 1806.)

Grant's uncontested speeding and reckless driving amounts to probable cause for McCommon to initiate a traffic stop. United States v. Bailey, 407 F. App'x 27, 28 (6th Cir. 2011) ("It is well-settled that a traffic stop is proper so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring") (citing United States v. Palomino, 100 F.3d 446, 448 (6th Cir.1996) (quotation marks omitted)). Grant's speeding, and the crashing of the car, also amount to probable cause for his arrest. See, e.g., Brown v. Kowalski, No. 18-1767, 2018 WL 8758696, at *1 (6th Cir. Oct. 11, 2018) ("[Defendant's] arrest was justified by his speeding . . . and crashing his car"); see also Galas v. McKee, 801 F.2d 200, 203 (6th Cir. 1986) (describing the lawful seizure of an injured driver following a high-speed chase and car crash).

The dispute over the how Officer McCommon determined that Grant was speeding does not amount to "a sufficient disagreement to require submission to a [fact finder.]" Liberty Lobby, 477 U.S. at 251–52.  It is admitted that Grant was "speeding and driving recklessly." (ECF No. 67 ¶ 2.)  Because McCommon had probable cause to initiate the traffic stop and to arrest Grant, the Court need not evaluate whether the incapacitated Decedents were seized when Grant was arrested.

There is no evidence that rebuts Defendants' proof that Grant was speeding.  Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Plaintiffs' Fourth Amendment unreasonable seizure claims.

### b.  *Fifth and Fourteenth Amendment Substantive Due Process Claims*

Plaintiffs' Complaint alleges that McCommon initiated his pursuit without "reasonable suspicion [or] probable cause," in violation of the Decedents' due process rights.  (ECF No. 29 ¶ 29.)  Defendants describe "[t]he conduct of Defendant Officers [McCommon, Abbott, and Leake] in hitting one or more of the Decedents with a patrol car" as constituting "deadly, excessive, and unreasonable force."  (Id. ¶ 69.)  They contend that "the conduct of Defendant Officers" in allegedly running over one or more of the Decedents was a "grossly disproportionate" action in violation of their "liberty interests."  (Id.)  In Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiffs extend their allegations of due process violations to the "continued pursuit of the Grant car" as "shock[ing] the conscience" and implicating substantive due process.  (ECF No. 67-1 at PageID 1823.)

"The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."  Scott v. Clay Cnty., Tenn., 205 F.3d 867, 873 n. 8 (6th Cir.

2000).  Plaintiffs' Fifth Amendment due process claims against a municipality are therefore a "nullity" and run solely through the Fourteenth Amendment and Section 1983.  (Id.)

As the Court articulated above, McCommon had probable cause to initiate a traffic stop and to make an arrest in the instant case.  See Bailey, 407 F. App'x at 28.  McCommon did not initiate his pursuit without "reasonable suspicion [or] probable cause."  (ECF No. 29 at PageID 1538.)

Officers McCommon, Leake, and Abbott (the "Defendant Officers") all have provided evidence that they did not run over any of the Decedents.  (ECF Nos. 64-3 ¶ 9, 64-4 ¶ 7, 64-5 ¶ 7; see also ECF No. 67 ¶ 22 ("Abbott, Leake and McCommon did not run over anyone and they did not witness anyone get run over").)  Plaintiffs do not dispute the assertions of the Defendant Officers.  (ECF No. 67 at PageID 1811.)  Plaintiffs argue that "the CIRT report prepared by the Tennessee Highway Patrol . . . does not conclusively rule out the possibility that" one of the Decedents was hit or killed by a police vehicle.  (ECF No. 67-1 at PageID 1821.)  The mere possibility that one of the Decedents was run over does not amount to "evidence upon which a reasonable jury could find" in favor of the Plaintiffs.  Tingle, 692 F.3d at 529.

Section 1983 claims may be brought under the Fourteenth Amendment against police officers engaging in pursuit where death or injury to an innocent third party results.  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845–49.  Such a claim is only cognizable when the object of the pursuit is "to cause harm unrelated to the legitimate object of arrest."  Id. at 836.  "[H]igh-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983."  Id. at 854.  Plaintiffs put forward no more than "conclusory allegations" and "subjective beliefs" that McCommon engaged in his pursuit with the intent to harm Grant and the Decedents.  Mitchell,

964 F.2d at 584–85.  Plaintiffs also assert that whether or not Defendants' actions "shock[] the conscience" is a "question for the jury," and therefore not an appropriate subject for summary judgment.  (ECF No. 67-1 at PageID 1824.)  This is only true of a case in which the non-moving party presents a "triable issue of material fact."  Mosholder, 679 F.3d at 448–49.  Plaintiffs have failed to produce any evidence tending to show that there is a "genuine issue of material fact" regarding the conduct of McCommon or the other officers.  Pharos Capital Partners, 535 F. App'x at 52 (quoting Tucker, 539 F.3d at 531).

Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Plaintiffs' Fourteenth Amendment Substantive Due Process claims.

### c.   Fourteenth Amendment Equal Protection Claims

Plaintiffs' Complaint alleges that Dyersburg, by and through Police Chief Isbell, "permitted and tolerated" "racial profiling in targeting young black men in violation of equal protection under the law and due process of law."  (ECF No. 29 ¶ 68.)  Plaintiffs argue that the Dyersburg Police Department failed to adequately "train, supervise, or control" its officers, and even tolerated or encouraged racial profiling by them.  (Id. ¶¶ 73, 76–78.)  Plaintiffs do not offer any affirmative evidence of a "[policy] and culture" of "racial profiling" in the Dyersburg Police Department.  (Id. at PageID 1529.)  The Dyersburg Police Department, on the other hand, puts forward a number of undisputed policies and procedures that were in place to minimize racial bias, including annual evaluations of officers, policies prohibiting officers from making traffic stops on account of race, annual reviews of demographic data on traffic stops and an annual report on bias-based profiling issues.  (ECF No. 67 ¶¶ 30–35; 38.)

Plaintiffs' Complaint also alleges that McCommon "targeted Defendant Grant's vehicle because it contained four (4) young black men."  (Id. ¶ 38.)  McCommon sets out in his declaration

facts regarding the events of May 17, 2020, including the fact that he did not know the race or number of the occupants of the vehicle.  (ECF No. 64-3 ¶ 8.)  It is undisputed that "when McCommon attempted to stop Grant, he had no knowledge of the age(s), gender(s), race(s), or even how many people were in the vehicle."  (ECF No. 67 at PageID 1810.)  Moreover, Plaintiffs present no affirmative evidence that McCommon singled out any person or persons belonging to an "identifiable group."  Cunningham v. Sisk, 136 F. App'x 771, 775 (6th Cir. 2005).  Plaintiffs merely speculate that McCommon's police report "seems to indicate that McCommon may have been close enough to see the three passengers as they were ejected from the Grant vehicle."  (ECF No. 67-1 at PageID 1820.)  The ejection of the occupants from Grant's vehicle occurred at a point in time long after McCommon initiated the traffic stop and engaged in his pursuit of the vehicle. (See id.)  Plaintiffs also note that "preliminary witness statements" indicate that "law enforcement" was "targeting" attendees of the gathering that Decedents and Grant were attending on the night of the crash.  (ECF No. 67-1 at PageID 1821.)  These witness statements are hearsay, and "hearsay evidence may not be considered on a motion for summary judgment." Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996) (citing Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment," such as those Plaintiffs rely on in the instant claim, "are not sufficient to defeat a motion for summary judgment."  Rachells, 2012 WL 3648835, at *2 (quoting Thomas, 328 F.3d at 894).

Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Plaintiffs' Fourteenth Amendment Equal Protection claims.

15

### d. Eighth Amendment Violations

Plaintiffs allege that Defendants "substantially deprived" the Decedents of their "Eighth . . . Amendment" rights. The Eighth Amendment is not implicated in the instant case because "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977). Plaintiffs were not convicted of a crime at the time of the accident.

Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Plaintiffs' claims pursuant to the Eighth Amendment.

### e. State-Created Danger Claims

Plaintiffs' Complaint alleges that the actions of Defendants resulted in a "state-created danger" causing the deaths of the Decedents. (ECF No. 29 ¶ 64.) The elements a plaintiff must show to prevail on a state-created danger claim are:

> (1) An affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party;
> (2) A special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and
> (3) The state knew or should have known that its actions specifically endangered the plaintiff.

Jahn v. Farnsworth, 617 F. App'x 453, 463 (6th Cir. 2015) (quotations omitted).

Plaintiffs do not claim that Decedents were "exposed to an act of violence by a third party," the first element of the state-created danger doctrine. Id. The Fourteenth Amendment "does not transform every tort committed by a state actor into a constitutional violation." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 202 (1989).

Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Plaintiffs' Fourteenth Amendment claims of state-created danger.

### B.  CLAIMS THAT MAY BE STATE OR FEDERAL

#### a.  Failure to Render Aid Claims

Plaintiffs' Complaint alleges that Defendant Officers were "under a duty to render aid to the decedents" after the car accident but instead "focused their attention on restraining Defendant Grant," resulting in the death of one or more of the Decedents.  (ECF No. 29 ¶¶ 129–135.) Plaintiffs argue that this violates Tenn. Code Ann. § 55-10-103 and is a violation of a common law tort.  (Id.)  Plaintiffs may also be alleging that Defendants' actions violated the Fourteenth Amendment Due Process right "to adequate medical treatment."  Cnty. of Washtenaw, 358 F.3d 377, 383 (6th Cir. 2004).

Plaintiffs do not dispute that McCommon and Abbot called for medical aid for the Decedents.  (ECF No. 64-3 ¶ 6; ECF No. 64 at PageID 1808–09.)  Abbott states in his affidavit that he did not move the injured Decedents or otherwise render aid because he feared he would exacerbate their injuries if he did so in the absence of medical personnel.  (ECF No. 64-5 ¶ 5.) Defendants offer evidence in affidavits that they did, in fact, render aid, and Plaintiffs offer no "affirmative evidence" of a failure to render aid by any Defendant under any legal theory. Mitchell, 964 F.2d at 584.

Defendants' Motion for Judgment is therefore **GRANTED** as to Plaintiffs' claims that Defendants failed to render aid.

#### b.  False Arrest Claims

Plaintiffs' Complaint alleges that Defendants did not have "reasonable suspicion or probable cause to seize the occupants" of the vehicle, so that Defendants' actions "constitute false arrest."  (ECF No. 29 ¶¶ 105–11.)  As the Court articulated above, Defendants had probable cause to arrest Grant.  Under both Federal and Tennessee law, to prevail on a false arrest claim, a plaintiff

17

must show that the arresting officer did not have probable cause for the arrest.  See Voyticky v. Vill. of Timberlake, 412 F.3d 669, 677 (6th Cir. 2005) ("A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff"); see also Brown v. Christian Bros. Univ., 428 S.W.3d 38, 54 (Tenn. Ct. App. 2013) ("[F]alse imprisonment requires that the defendant must have acted without probable cause" under Tennessee law.).

Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Plaintiffs' false arrest claims.

### C.  STATE LAW CLAIMS

#### a.  Claims Pursuant to the Tennessee Constitution

Plaintiffs' Complaint alleges that Defendants "substantially deprived" them of their rights under "Section 7 and 8 of the Constitution of the State of Tennessee," apparently in violation of Section 1983.  (ECF No. 29 ¶ 64.)  Section 1983 creates a private right of action for violations of the federal Constitution alone.  Luckett v. Turner, 18 F. Supp. 2d 835, 839 (W.D. Tenn. 1998) ("[Section 1983] is meant to provide a cause of action for violations of federally created rights, not state constitutions").  Additionally, "it is well established that Tennessee does not recognize an implied private cause of action for damages based upon violation of the Tennessee Constitution." Wooley v. Madison Cnty., 209 F. Supp. 2d 836, 844 (W.D. Tenn. 2002).

Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Plaintiffs' claims pursuant to the Constitution of Tennessee.

#### b.  State Tort Law Negligence Claims

Plaintiffs' Complaint alleges that Dyersburg and Dyersburg Police Chief Isbell should be held liable for the torts of Defendant Officers, as they were "negligent in instigating and continuing

18

the high-speed chase" of the vehicle driven by Decedents. (ECF No. 29 ¶ 81.)  Plaintiffs also allege that Defendant Officers acted negligently in operating their vehicles at speeds "which were excessive under the conditions then and there existing" such that the "likelihood of injury was foreseeable."  (Id. ¶ 86–89.)  Finally, Plaintiffs argue that the Dyersburg Police Department failed to "create and/or implement" an appropriate high speed vehicle pursuit policy.  (Id. ¶ 83.)

The doctrine of sovereign immunity normally bars actions against a state entity such as Dyersburg "unless the legislature has abrogated or waived immunity."  Boone v. Town of Collierville, 593 S.W.3d 156, 160 (Tenn. Ct. App. 2019) (citing Whitmore v. Shelby Cty. Gov't, No. W2010-01890-COA-R3-CV, 2011 WL 3558285, at *2 (Tenn. Ct. App. Aug. 15, 2011). Immunity is removed in the circumstances set forth in Tenn. Code Ann. § 29-20-202(a), "which permits a tort action against a governmental entity such as the City for the negligence of its employee while operating a motor vehicle in the scope of his or her employment."  Fawcett v. Adreon, No. M2000-00940-COA-R3CV, 2001 WL 950159, at *2 (Tenn. Ct. App. Aug. 21, 2001). "However, an exception to this is contained in Tennessee Code Annotated § 55-8-108, which permits law enforcement . . . to disregard certain rules of the road in limited circumstances."  Id. Under Tennessee law, a municipality may be held liable for injuries to third parties which occur during a police chase, but not for injuries to "an actual or suspected violator of law or ordinance who is fleeing pursuit by law enforcement personnel."  Tenn. Code Ann. § 55-8-108(e); see also id. at *3.  "[A] police officer can reasonably assume that the passenger in the fleeing vehicle is engaged in a common criminal activity with the driver and would therefore be a suspected violator of the law under Section 55-8-108(e)."  Fawcett, 2001 WL 950159 at *4.  Accordingly, "the City cannot be held liable for [the death of a passenger in a motor vehicle], even if the police officer's decision to commence or continue the chase was negligent."  Id.  Defendants have asserted, and it

is conceded, that Grant was speeding and evading arrest, and it was not improper for McCommon to assume that Grant's passengers were "engaged in a common criminal activity" with him.  Id.; (see also ECF No. 64-3 at ¶ 3–4.)  The Court need not determine whether McCommon's actions were negligent to reach the conclusion that Dyersburg cannot be held liable for the pursuit.

Although it is not liable for tort damages in the instant case, Dyersburg is the appropriate suable entity because its immunity is removed by statute.  See Tenn. Code Ann. § 29-20-202(a).  Police Chief Isbell, as an employee of the city, is not subject to tort liability.  See Tenn. Code Ann. § 29-20-310(b) ("No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter").

The Court has not been provided with any evidence regarding Defendants' high-speed chase policy or the lack thereof.  "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment," such as Plaintiffs rely on in asserting that the Dyersburg Police Department has failed to create or implement a high-speed vehicle pursuit policy, "are not sufficient to defeat a motion for summary judgment."  Rachells, 2012 WL 3648835, at *2 (quoting Thomas, 328 F.3d at 894).

Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Plaintiffs' state tort law negligence claims.

### c.  Negligent or Intentional Infliction of Emotional Distress

Plaintiffs' Complaint alleges that Defendants "[hit] or [ran] over the bodies of one or more of the decedents," which action resulted in "psychological harm" to Plaintiffs' "natural parents and next friends," constituting the tort of intentional or negligent infliction of emotional distress. (ECF No. 29 ¶¶ 112–123.)  It is an undisputed fact that "Abbott, Leake, and McCommon did not

run over anyone. . ."  (ECF No. 67 ¶ 22; <u>see also</u> ECF Nos. 64-3, 64-4, 64-5.)  Moreover, as the Court articulated above, even if there was a possibility that one of the Decedents was run over, that does not amount to "evidence upon which a reasonable jury could find" in favor of the Plaintiffs.  <u>Tingle</u>, 692 F.3d at 529.

Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Plaintiffs' claims that Defendants negligently or intentionally inflicted upon them tortious emotional distress.

### d.  *Respondeat Superior and Supervisory Claims*

Plaintiffs' Complaint argues that Dyersburg should be held liable for the unconstitutional actions of Defendant Officers under the doctrine of *respondeat superior*.  (ECF No. 29 ¶¶ 124–128.)  There is no basis by which the municipality or a supervisor may be held liable for the conduct of the officers, as the officers did not violate the constitutional rights of the Plaintiffs.  <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (per curiam).

 Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Plaintiffs' *respondeat superior* and supervisory liability claims.

### D.  *CLAIMS AS TO JOHN AND JANE DOE AND JEREMY GRANT II*

Plaintiffs' Complaint names, in addition to the identifiable Defendants, John or Jane Does, who were "law enforcement officers" whose identities were "not currently known or knowable to the Plaintiffs" at the time of filing the Complaint.  (ECF No. 29 ¶ 16.)  The Federal Rules of Civil Procedure provide that "if a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R.

Civ. P. 4(m).  The pleadings have not been amended to name any additional individuals.  Over 90 days have elapsed since the Complaint was filed.[1]

Grant is in a similar situation.  A summons in connection with the initial complaint was issued for him on May 12, 2021.  (ECF No. 6-2 at PageID 58.)  He was served on June 28, 2021.  (ECF No. 12 at PageID 137.)  However, Grant was never served with the Second Amended Complaint.  (See ECF No. 29.)  No Answer or Motion has been filed on his behalf and no default has been taken pursuant to Rule 55.  "An amended complaint takes the place of the original complaint, effectively invalidating the original complaint."  Mowafy v. Noramco of Del., Inc., 2007 U.S. Dist. LEXIS 72228, *12.  However, when a defendant has "not been [made] aware of the amended complaint," that individual is still obligated to "timely answer . . . the original complaint."  Id.  The case as to Defendant Grant, therefore, remains pending.


IV.    CONCLUSION

For the reasons set out above, the Defendants' Motion for Summary Judgment is **GRANTED** in its entirety.  The only remaining defendant is Jeremy L. Grant II.

This case is currently set for trial beginning Monday, December 5, 2020 at 9:30 A.M. All named Defendants except Grant having been dismissed, the trial in this case is continued.  Plaintiffs shall file a notice indicating how they wish to proceed as to Defendant Jeremy L. Grant II by no later than Wednesday, November 30, 2022.  A status conference will be set by separate notice within 30 days to set a final schedule in this case.

---

[1] Additionally, the Court notes that the filing of a complaint against unnamed Defendants does not toll the statute of limitations.  See Cox v. Treadway, 75 F.3d 230, 240 (6th Cir.).  Plaintiffs' 1983 claims are therefore also stale against any unnamed defendants.  See Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) ("Under Tennessee law, 'civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes' must commence 'within one (1) year after the cause of action accrued.'" (quoting Tenn.Code Ann. § 28–3–104(a)(3).)

**IT IS SO ORDERED**, this 18th day of November, 2022.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE